IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| CYANOTECH CORPORATION, | ) | CIVIL NO. 12-00352 JMS-RLP |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING DEFENDANTS' |
| | ) | MOTION TO DISMISS |
| vs. | ) | |
| | ) | |
| U.S. NUTRACEUTICALS, LLC, | ) | |
| d/b/a/ VALENSA INTERNATIONAL, | ) | |
| AND THE UNIVERSITY OF | ) | |
| ILLINOIS, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

## I. __INTRODUCTION__

In this action, Plaintiff Cyanotech Corporation ("Cyanotech") seeks a

declaration of non-infringement or invalidity of a patent licensed to Defendant U.S.

Nutraceuticals, LLC, d/b/a Valensa International ("Valensa"), and owned by the

University of Illinois (the "University") (collectively "Defendants").  Defendants

move to dismiss, contending that the University has Eleventh Amendment

immunity, and that the court lacks personal jurisdiction over both Defendants.  And

because the University is a required party to this action as an owner of the patent,

Defendants argue that the action must be dismissed under Federal Rules of Civil

Procedure 12(b)(7) and 19(b).

The court GRANTS Defendants' Motion.  The University indeed has Eleventh Amendment immunity and is a party whose joinder is not feasible under Rule 19(a).[1]  Applying Rule 19(b), because the action cannot proceed without the University, the court DISMISSES the action without prejudice to Cyanotech asserting its claims in a parallel patent infringement action pending against it in the U.S. District Court for the Middle District of Florida.  *See U.S. Nutraceuticals LLC v. Cyanotech Corp.*, No. 5:12-cv-366OC-10TBS (M.D. Fla. June 29, 2012) (the "parallel action").

## II.  **BACKGROUND**

A.    **Factual Background**[2]

Among other products, Cyanotech develops a microalgae in Kailua-Kona, Hawaii that contains astaxanthin, an antioxidant that is claimed to have a wide variety of human health benefits.  *See, e.g.*, Doc. No. 1, Compl. ¶¶ 1 & 13

---

[1]  Because the suit is dismissed under Federal Rules of Civil Procedure 12(b)(7) and 19, the court need not reach whether personal jurisdiction exists as to the University or as to Co-Defendant U.S. Nutraceuticals, LLC, d/b/a Valensa International ("Valensa").  Accordingly, the the Ex Parte Motion for Leave to File Supplemental Material, Doc. No. 46; and the Ex Parte Motion to File Under Seal, Doc. No. 47, are both DENIED as MOOT.

[2]  Given that the court need not reach personal jurisdiction issues, this factual background focuses on describing the basic allegations of the merits of the dispute, and the facts related to whether the University is a required party under Rule 19.  That is, the court does not set forth much of the background related to Valensa's and the University's contacts (or lack of contacts) with the Hawaii forum that might be otherwise be relevant to a personal jurisdiction analysis.

2

(alleging that astaxanthin "is a natural product long known for its ability to neutralize free radicals, thereby promoting eye health, reducing sunburn, and reducing other types of photic damage").  Cyanotech supplies this microalgae in an algal biomass to Valensa under a November 2, 2007 Biomass Supply Agreement.  Doc. No. 37-4, Pl.'s Ex. 11; Doc. No. 10-2, Moerk Decl. (July 30, 2012) ¶ 8.  Valensa in turn extracts the astaxanthin from the biomass and -- in part utilizing its rights under U.S. Patent No. 5,527,533 (the "'533 Patent" or the "Tso Patent") -- develops and sells ingredients or formulations to others who package, distribute, and sell retail health-related products.  Doc. No. 39-1, Moerk Decl. (Jan. 9, 2013) ¶ 4; Doc. No. 1, Compl. ¶ 4.  In particular, the '533 Patent relates to a method of using astaxanthin for "retarding and ameliorating central nervous system and eye diseases."  Doc. No. 1-1, '533 Patent at 7.

The University owns the '533 Patent.  Doc. No. 1, Compl. ¶ 5.  Specifically, the '533 Patent lists its inventors as Mark O.M. Tso and Tim-Tak Lum, and its assignee as the Board of Trustees of the University of Illinois.  Doc. No. 1-1, '533 Patent at 1.  According to the Complaint, the University "is a public entity of the State of Illinois with its principal place of business in Chicago, Illinois."  Doc. No. 1, Compl. ¶ 3.  In this regard, the University is "a body corporate and politic" under Illinois law, 110 Ill. Comp. Stat. § 305/1, and is

therefore "an arm of the state [of Illinois] for Eleventh Amendment purposes."

*Ranyard v. Bd. of Regents*, 708 F.2d 1235, 1239 (7th Cir. 1983).  In turn, the

University licensed certain rights to the '533 Patent to La Haye Laboratories, Inc.

("La Haye"), Doc. No. 10-9, and La Haye's interests were later assigned in their

entirety to Valensa.  Doc. No. 10-3, Kohlhepp Decl. ¶ 5.  Not all rights were

licensed -- for example, under the license agreement, the University "shall retain

the right to practice the rights licensed . . . for its own non-commercial and

research activities."  Doc. No. 10-9, Defs.' Ex. A ¶ 2.3.

A dispute arose in 2011 between Cyanotech and Valensa regarding

Cyanotech's own astaxanthin products such as "EyeAstin" and "BioAstin."  *See,*

*e.g.*, Doc. No.1-2, Compl. Ex. B.  Valensa contends that Cyanotech is infringing on

Valensa's rights in the '533 Patent when Cyanotech holds out to others that its

astaxanthin products prevent photic damage to the eye or improve eye health.  *Id.*;

Doc. No. 10-4, Compl. (parallel action) ¶ 24.  On March 22, 2011, Valensa

President Rudi Moerck sent an email to Brent Bailey and Gerry Cysewski of

Cyanotech, explaining why Valensa believes "it is obvious" that Cyanotech is

using Valensa's "Tso Patent" "for the promotion of [Cyanotech's] products to

consumers and customers."  Doc. No. 1-2, Compl. Ex. B.  In the email, Valensa

asked Cyanotech to "cease and desist selling BioAstin to customers for eye health

4

indications contained in the Tso patent, . . . cease selling and promoting EyeAstin using our IP, and . . . agree to pay [Valensa] a royalty fee retroactively for all sales of EyeAstin and BioAstin sold to customers making label or literature claims based on the Tso patent." *Id.*

On June 20, 2012, Cyanotech filed this action, asserting three Counts. First, it seeks, as to both Defendants, a declaratory judgment of non-infringement of the '533 Patent and for patent invalidity.  Doc. No. 1, Compl. ¶ 19.  Citing the March 22, 2011 email from Valensa, the Complaint alleges that Cyanotech "has been repeatedly threatened by Valensa with having allegedly committed infringing conduct, and engaging in an allegedly infringing activity, causing reasonable apprehension that one or both Defendants will bring suit as Cyanotech's activities continue." *Id.* ¶ 21.  Cyanotech alleges that the '533 Patent is invalid and that "[Cyanotech's] conduct and actions . . . fall outside the scope of the '533 Patent claims as amended during prosecution of the application and as finally issued by the U.S. Patent and Trademark Office." *Id.* ¶ 22.  It also alleges that the University "is or may be a necessary party pursuant to Fed. R. Civ. P. Rule 19 as the United States Patent and Trademark Office lists [the University] as the assignee of the Patent-in-Suit thereby making it the last recorded owner[.]" *Id.* ¶ 24.

Counts Two and Three are state law claims directed only at Valensa.

5

Count Two (which mentions threats made in "bad faith," but does not specify a

cause of action) alleges that certain claims of the '533 Patent, as its original patent

application had sought, "were expressly rejected by the Patent Office in view of

extensive prior art establishing the use of astaxanthin for eye health and other

protective functions." *Id.* ¶ 29.  It alleges that the scope of the '533 Patent was

narrowed to claims "treating an individual suffering from . . . retinal disease or

damage." *Id.*  Thus, Count Two alleges that

> In spite of the clear change to the scope of the patent
> claims, Valensa, in bad faith, has threatened Cyanotech,
> and on information and belief has threatened Cyanotech's
> distributors and other parties, who supply astaxanthin as
> an ingredient in nutritional supplement formulations for
> use in eye health, with infringement of the '533 Patent[.]

*Id.* ¶ 31.  Regardless of whether these allegations state a cause of action recognized

by Hawaii State Courts, Count Two squarely implicates the meaning and scope of

the '533 Patent.

Similarly, Count Three asserts that Valensa "engaged in unfair

methods of competition in violation of Hawaii Revised Statutes ("HRS") § 480-2

by engaging in a systematic pattern and practice of unlawful threats, intimidation

and harassment of suppliers and sellers of astaxanthin products in Hawaii and

elsewhere, including Cyanotech." *Id.* ¶ 36.  Count Three alleges that Valensa's

claims of infringement are false:  "[O]n multiple occasions in the years 2010 and

2011, Valensa's authorized representatives . . . made materially false statements . . . that the use of astaxanthin products as a preventative measure to maintain eye health infringed the claims of the ['533 Patent]." *Id*. ¶ 37.  Count Three further claims that "Valensa made similar false claims and threats to other producers, buyers and sellers of astaxanthin products for the purpose of unlawfully restricting competition" when it "knew or should have known that those statements were false." *Id*. ¶¶ 39-40.  "Valensa made the foregoing statements with the intent to deceive, mislead, harass and intimidate Cyanotech and others in an effort to gain an unlawful and unfair competitive advantage." *Id*.  ¶ 41.  "Valensa's conduct and unfair methods of competition was injurious to consumers in [Hawaii] by, among other things, limiting competition and increasing costs." *Id*. ¶ 42.  Thus, like Count Two, Count Three directly depends upon an interpretation of the validity of the '533 Patent.

On June 29, 2012 -- nine days after Cyanotech filed this action -- Valensa and the University filed a parallel action in the Middle District of Florida, alleging that Cyanotech and Nutrex Hawaii, Inc. (a company affiliated with Cyanotech) infringed, and is continuing to infringe, the '533 Patent.[3]  Doc. No. 10-

---

[3]  The parties dispute whether Cyanotech's action was served on Defendants before Defendants filed the parallel action.  *See* Doc. No. 10-1, Defs.' Mot. at 5; Doc. No. 37-6, Lamon Aff. ¶¶ 9-10.  Ultimately, this dispute is irrelevant to disposition of this Motion.

5, Defs.' Mot. Ex. 2, Compl. (parallel action) ¶¶ 23-32.  That is, the same primary

dispute regarding the '533 Patent that is at issue in this action is also pending in the

parallel action in the Middle District of Florida.

## B.     Procedural Background

Defendants filed this Motion to Dismiss on July 30, 2012, Doc. No.

10, and the Motion was set for hearing on October 29, 2012.  On October 5, 2012,

Cyanotech sought to continue the hearing to permit limited jurisdictional discovery

on the issue of personal jurisdiction.  Doc. No. 28.  The request for continuance

was granted on October 10, 2012.  Doc. No. 31.  Cyanotech filed its Opposition to

the Motion on January 2, 2013, Doc. No. 37, and Defendants filed a Reply on

January 9, 2013.  Doc. No. 39.  The court heard the Motion on January 22, 2013.

Supplemental Memoranda were filed on January 25, 2013.  Doc. Nos. 44, 45.

## III.  <u>STANDARD OF REVIEW</u>

Under Rule 12(b)(7), an action may be dismissed for failure to join a

required party under Rule 19.[4]  "To determine whether Rule 19 requires the joinder

---

[4] Federal Rule of Civil Procedure 19 provides, in pertinent part, as follows:
(a) Persons Required to Be Joined if Feasible.
(1) Required Party.  A person who is subject to service of process
and whose joinder will not deprive the court of subject-matter
jurisdiction must be joined as a party if:
(A) in that person's absence, the court cannot accord
complete relief among existing parties; or

(continued...)

of additional parties, the court may consider evidence outside the pleadings."

*Aliviado v. Kimoto*, 2012 WL 2974225, at *2 (D. Haw. July 19, 2012) (citing

*McShan v. Sherrill*, 283 F.2d 462, 464 (9th Cir. 1960) (other citation omitted)); *see*

*also Davis Cos. v. Emerald Casino, Inc.*, 268 F.3d 477, 480 n.4 (7th Cir. 2001)

("In ruling on a dismissal for lack of joinder of an indispensable party, a court may

go outside the pleadings and look to extrinsic evidence.") (citations omitted).

        "Since joinder [under Rule 19] is an issue not unique to patent law,"

---

[4](...continued)

> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.
> . . . .
> (b) When Joinder Is Not Feasible.  If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed.  The factors for the court to consider include:
> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
> (2) the extent to which any prejudice could be lessened or avoided by:
>> (A) protective provisions in the judgment;
>> (B) shaping the relief; or
>> (C) other measures;
> (3) whether a judgment rendered in the person's absence would be adequate; and
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

the court applies Ninth Circuit law, rather than Federal Circuit law, in analyzing Rule 19.  *A123 Sys., Inc. v. Hydro-Quebec*, 626 F.3d 1213, 1220 (Fed. Cir. 2010). Determining whether to dismiss an action under Rule 19 is a three-step process. *EEOC v. Peabody W. Coal Co.*, 610 F.3d 1070, 1078 (9th Cir. 2010) ("*Peabody III*") (citing *EEOC v. Peabody W. Coal. Co.*, 410 F.3d 774, 779 (9th Cir. 2005) ("*Peabody II*")).  "First, the court must determine whether a nonparty should be joined under Rule 19(a)."  *Id.* (quoting *Peabody II*, 410 F.3d at 779).[5]  If a nonparty meets the requirements of Rule 19(a), "the second stage is for the court to determine whether it is feasible to order that the absentee be joined."  *Id.*  "'Finally, if joinder is not feasible, the court must determine at the third stage whether the case can proceed without the absentee' or whether the action must be dismissed." *Peabody III*, 610 F.3d at 1078 (quoting *Peabody II*, 400 F.3d at 779).  The case cannot proceed if the party is one who

> not only [has] an interest in the controversy, but [has] an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience.

---

[5]  Previously, courts used the term "necessary" to describe such persons, *Peabody II*, 410 F.3d at 779, but Rule 19(a) now refers to whether a party is "required."

*Id.* (quoting *Shields v. Barrow*, 58 U.S. 130, 139 (1855)).[6]

# IV. DISCUSSION

Defendants contend that the University must be dismissed because it has Eleventh Amendment immunity, and the University is a required party whose joinder is not feasible under Rule 19(b).  The court analyzes each step in turn.

## A.    Eleventh Amendment Immunity[7]

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another

---

[6]  Rule 19 was amended on December 1, 2007, eliminating Rule 19(b)'s former use of the term "indispensable" at this third step.  This change, however, was stylistic only, and thus prior cases referencing "indispensable" parties remain good law.  *See Republic of Philippines v. Pimentel*, 553 U.S. 851, 855-56 (2008) (stating that changes to Rule 19(b) were stylistic only); *CP Solutions PTE, Ltd. v. Gen. Elec. Co.*, 553 F.3d 156, 159 n.2 (2d Cir. 2009) ("There is no substantive difference between the present [Rule 19(b)] and the rule as applied . . . prior to the 2007 amendment."); *see also EEOC v. Peabody W. Coal Co.*, 610 F.3d 1070, 1077 (9th Cir. 2010) ("*Peabody III*") ("Although the wording of Rule 19 has changed . . . its meaning remains the same.").  *Peabody III* noted that

> [f]ormer Rule 19(b) described the conclusion that an action should
> be dismissed for inability to join a Rule 19(a) party by carrying
> forward traditional terminology: "the absent person being thus
> regarded as indispensable." "Indispensable" was used only to
> express a conclusion reached by applying the tests of Rule 19(b).
> It has been discarded as redundant.

610 F.3d at 1077 n.1 (quoting Fed. R. Civ. P. 19 advisory committee's note (2007)).

[7]  "[Q]uestions of Eleventh Amendment immunity for patent infringement claims are reviewed under Federal Circuit law."  *Pennington Seed, Inc. v. Produce Exch. No. 299*, 457 F.3d 1334, 1338 (Fed. Cir. 2006) (citing *Regents of the Univ. of N.M. v. Knight*, 321 F.3d 1111, 1123-24 (Fed. Cir. 2003)).

State, or by Citizens or Subjects of any Foreign State." Under the Eleventh

Amendment, states cannot be sued in federal court, whether by their own citizens

or citizens of another state. *Papasan v. Allain*, 478 U.S. 265, 275 (1986). This

Eleventh Amendment bar also applies to federal actions brought against state

agencies and instrumentalities. *Shaw v. Cal. Dep't of Alcoholic Beverage Control*,

788 F.2d 600, 603 (9th Cir. 1986); *see also Tegic Commc'ns Corp. v. Bd. of

Regents of the Univ. of Texas Sys.*, 458 F.3d 1335, 1340 (Fed. Cir. 2006)

(reiterating that an "arm of the state" such as the University of Texas System, is

accorded Eleventh Amendment immunity). Moreover, "[t]he [Supreme] Court has

confirmed the applicability of Eleventh Amendment immunity to suits pertaining

to violations of federal patent and trademark laws." *Tegic*, 458 F.3d at 1340 (citing

*Fla. Prepaid Postsecondary Educ. Expense Bd. v. College Sav. Bank*, 527 U.S. 627

(1999)); *see also, e.g.*, *A123*, 626 F.3d at 1221.

### 1. *The University Has Eleventh Amendment Immunity*

"In *Cannon v. University of Health Sciences/Chicago Medical School*,

710 F.2d 351 (7th Cir. 1983), the Seventh Circuit held that the [Board of Trustees

of the University of Illinois] qualified as an 'arm of the state' for Eleventh

Amendment purposes." *Pollak v. Bd. of Trs. of the Univ. of Ill.*, 2004 WL

1470028, at *1 (N.D. Ill. June 30, 2004). And *Cannon* "has been consistently

upheld by numerous decisions within the Seventh Circuit and its subservient

district courts." *Id.* (citing *Kaimowitz v. Bd. of Trs. of the Univ. of Ill.*, 951 F.2d

765, 767 (7th Cir. 1991), *Goshtashby v. Bd. of Trs. of the Univ. of Ill.*, 123 F.3d

427 (7th Cir. 1997), and *McMiller v. Bd. of Trs. of the Univ. of Ill.*, 275 F. Supp. 2d

974, 979 (N.D. Ill. 2003)).  *See also, e.g.*, *Ranyard*, 708 F.2d at 1239 ("[T]he

Board of Regents [of the University of Illinois] is an arm of the state for Eleventh

Amendment purposes."); *Harper v. Univ. of Ill. at Chicago*, 1996 WL 288628, at

*2 (N.D. Ill. May 30, 1996) ("There can be no dispute that [the University of

Illinois at Chicago] is an arm of 'the state' for purposes of the Eleventh

Amendment.") (numerous citations omitted).  Thus, under this great weight of

authority, this action is barred against the University in this court unless it waived

its Eleventh Amendment immunity.  *See, e.g.*, *Idaho v. Couer d'Alene Tribe*, 521

U.S. 261, 267 (1997) (explaining that Eleventh Amendment is a waivable

immunity from suit, not "a nonwaivable limit on the federal judiciary's subject-

matter jurisdiction.").

> ###   2.      *The University Has Not Waived its Immunity*

            In response to this overwhelming body of caselaw, Cyanotech points

out that the Illinois Constitution has waived the state's sovereign immunity "except

as provided by the [Illinois] General Assembly."  Ill. Const. art. XIII, § 3.  It then

argues that, to the extent the Illinois legislature has provided for immunity, such immunity does not apply to declaratory relief actions.  Doc. No. 37, Pl.'s Opp'n at 19-20.

But Cyanotech's sole citation, *City of Chicago v. Board of Trustees of the University of Illinois*, 689 N.E.2d 125 (Ill. App. 1997), only applies to certain types of actions in an Illinois state court.[8]  The Illinois Appellate Court did not -- and could not in any binding manner -- address whether the University waived Eleventh Amendment immunity in a *federal* forum.  Rather, as Defendants argue, ample authority confirms that Eleventh Amendment immunity applies to the patent invalidity issues raised by Cyanotech.  *See, e.g.*, *FMC v. S.C. State Ports. Auth.*, 535 U.S. 743, 765 (2002) ("[S]overeign immunity applies regardless of whether a private plaintiff's suit is for money damages or some other type of relief."); *Steadfast Ins. Co. v. Agric. Ins. Co.*, 507 F.3d 1250, 1252 (10th Cir. 2007) ("Eleventh Amendment immunity applies regardless of whether a plaintiff seeks declaratory or injunctive relief, or money damages."); *Tegic*, 458 F.3d at 1340 (explaining that the Eleventh Amendment bars claims seeking declarations of patent invalidity against states).

---

[8]  Defendants disagree that Illinois has waived immunity for declaratory relief actions in state courts.  *See* Doc. No. 39, Defs.' Reply at 4 n.2 (arguing that sovereign immunity applies to declaratory judgment actions in state court) (citing *State Bldg. Venture v. O'Donnell*, 239 Ill. 2d 151, 164-65 (Ill. 2010)).  The court need not reach this question of Illinois law.

Moreover, although the University is a plaintiff in the parallel action (and thus Defendants admit that the University has waived Eleventh Amendment immunity in the Middle District of Florida), it has not waived such immunity in the District of Hawaii. *See A123*, 626 F.3d at 1219-20; *Tegic*, 458 F.3d at 1342-43. A "State's constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it may be sued." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984). That is, under binding Federal Circuit precedent, Eleventh Amendment immunity in this context is venue specific. *Tegic*, 458 F.3d at 1342 ("We agree with the University that is filing [in the Western District of Texas] did not establish waiver [of Eleventh Amendment immunity] as to this separate action [in the Western District of Washington].").  There is no applicable waiver by the University of the Eleventh Amendment in this action.

### 3.   Ex parte Young *Does Not Apply*

Cyanotech also seeks to invoke the narrow exception to Eleventh Amendment Immunity established in *Ex parte Young*, 209 U.S. 123 (1908), which is limited to prospective, injunctive relief to enjoin state officials from ongoing violations of federal law. *See, e.g.*, *Pennhurst State Sch. & Hosp.*, 465 U.S. at 102-03. *Ex parte Young*, however, does not apply here.

Initially, Cyanotech recognizes that its Complaint fails to state a claim

15

seeking relief under *Ex parte Young*.  Doc. No. 45, Pl.'s Supp. Mem. at 8.  The

Complaint does not seek only prospective injunctive relief against the University,

and does not name any University official as a Defendant -- much less an

individual state official who is allegedly violating federal law.  *See Pennington*

*Seed, Inc., v. Produce Exch. No. 299*, 457 F.3d 1334, 1342-43 (Fed. Cir. 2006)

(requiring a "nexus between the violation of federal law and the individual accused

of violating that law").  In fact, Cyanotech admits that it does not know who that

official might be, but instead "will seek leave to amend to name all pertinent

University officials," once it "obtain[s] them in further discovery."  Doc. No. 45,

Pl.'s Supp. Mem. at 5.  Thus, the only question is whether the dismissal of the

University should be without prejudice -- that is, with leave to amend to allow

Cyanotech to attempt to state a claim under *Ex parte Young* against a proper

University official.  But, after careful consideration, the court concludes that

further amendment to seek relief under *Ex parte Young* would be futile.  *See, e.g.*,

*Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004) ("Futility alone can

justify the denial of a motion to amend."); *Cultor Corp. v. A.E. Staley Mfg. Co.*,

224 F.3d 1328, 1333 (Fed. Cir. 2000) ("Futility was apparent, and is adequate

grounds for the denial of leave to amend.").

　　　　Cyanotech's suit seeks a declaration under 28 U.S.C. § 2201 of *non-*

infringement.  In this regard, rather than seeking prospective injunctive relief to

enjoin an ongoing violation of federal law, in a sense it seeks the *opposite* -- a

declaration that there is *no* ongoing violation of federal law (by Cyanotech).  And

although Cyanotech also seeks a declaration of patent invalidity, such relief is also

not an assertion of an ongoing violation of federal law for which it could seek

prospective relief to enjoin further violations.  As Defendants point out, an issued

patent is presumed to be valid.  *See* 35 U.S.C. § 282(a) ("A patent shall be

presumed valid. . . .  The burden of establishing invalidity of a patent or any claim

thereof shall rest on the party asserting such invalidity.").  Unless and until the

'533 Patent is determined to be invalid, there cannot be an ongoing violation of

federal law for the University, which retains significant interests in its patent, to

allow Valensa (a licensee) to enforce that presumptively valid patent.[9]

    Cyanotech also concedes that no Federal Circuit or district court has

ever applied *Ex parte Young* to a declaratory relief action seeking a declaration of

non-infringement or patent invalidity.  Doc. No. 45, Pl.'s Supp. Mem. at 7.  It

relies, instead, on "additional views" (*i.e.*, not the actual Federal Circuit opinion) of

---

   [9]  Cyanotech points to *Pennington Seed*'s statement that "continuing prospective
violations of a federal patent right by state officials may be enjoined by federal courts under the
*Ex parte Young* doctrine."  457 F.3d at 1341.  Cyanotech, however, is not alleging that the
University (or an official of the University) is violating a *Cyanotech* patent.  Rather, this
declaratory relief action seeks just that -- a *declaration* that Cyanotech is not violating federal
law.

Judge Newman in *Xecham Int'l Inc. v. Univ. of Texas*, 382 F.3d 1324, 1333 (Fed. Cir. 2004), for the proposition that *Ex parte Young* is the only means of achieving "fundamental fairness" in patent disputes involving state agencies.  Doc. No. 45, Pl.'s Supp. Mem. at 7.  In circular fashion, it asks this court to allow a challenge based on *Ex parte Young* because "the facts of the instant declaratory judgment action conform perfectly to all requirements for application of the *Ex Parte Young* doctrine *once the pleadings are amended*[.]"  Doc. No. 45, Pl.'s Supp. Mem. at 8 (emphasis added).  But, for the reasons explained above, the Complaint cannot be so amended.

In short, because the University has not waived its Eleventh Amendment immunity in this federal court, and *Ex parte Young* does not apply, the University must be dismissed.

## B.    Application of the Rule 19 Standard

Without the presence of the University, Defendants argue that the entire action should be dismissed under Rule 19.  The court applies the three-step analysis set forth in *Peabody III*.

### 1.    *The University Should be Joined*

The first question under Rule 19's three-step analysis, is whether the University should be joined as a party.  *Peabody III*, 610 F.3d at 1078.

18

The University owns the '533 Patent.  It has not licensed or assigned all its rights in the '533 Patent to Valensa.  And if this action proceeds without the University's presence, the University could lose some of its rights in the '533 Patent without having participated in the suit.  It would be compelled to waive its Eleventh Amendment immunity -- a waiver Congress sought to implement, but which *Florida Prepaid* held was unconstitutional.  527 U.S. at 648.  In fact, Cyanotech's Complaint itself cited Rule 19 in naming the University, alleging under traditional Rule 19 terminology that the University "is or may be a necessary party pursuant to [Rule 19] as . . . it is the last recorded owner of the ['533 Patent] and on information and belief may have retained some ownership rights."  Doc. No. 1, Compl. ¶ 24.

Moreover, as to Counts Two and Three against Valensa, both of those state law Counts are grounded in whether Cyanotech is violating the '533 Patent -- the court cannot address those Counts without first addressing the nature and scope of the '533 Patent.  That is, even addressing only those Counts against Valensa, the University might well lose certain rights in its intellectual property without being present.  *See Dominant Semiconductors Sdn. Dhd. v. OSRAM GmbH*, 524 F.3d 1254, 1259 (Fed. Cir. 2008) ("Jurisdiction under section 1338(a) extends to cases . . . in which a well-pleaded complaint establishes either that federal patent law

19

creates the cause of action or that the plaintiff's right to relief necessarily depends

on resolution of a substantial question of federal patent law, in that patent law is a

necessary element of one of the well-pleaded claims.") (quoting *Biotechnology*

*Indus. Org. v. Dist. of Columbia*, 496 F.3d 1362, 1367 (Fed. Cir. 2007) (internal

quotation marks omitted)).  The state-law claims are bound up with the federal

patent issues.  *See Tiger Team Techs., Inc. v. Synesi Grp.*, 371 Fed. Appx. 90, 91,

2010 WL 1439062, at *1 (Fed. Cir. Apr. 12, 2010) ("A theory of liability under the

Minnesota Deceptive Trade Practices Act . . . is that Synesi disparaged TTT's

products by asserting claims of patent infringement against TTT.  For TTT to

prevail [on that count] it would need to prove that its products did not infringe

Synesi's patents."); *Seaflex, Inc. v. Fall Protection Sys., Inc*., 2007 WL 7239322

(S.D. Tex. Nov. 20, 2007) (dismissing and transferring both patent and state law

unfair competition claims because the court lacked personal jurisdiction over the

owner of the patent).

      Thus, at this first step, the court easily concludes that the University is

a party who should be joined.  *See, e.g.*, *A123*, 626 F.3d at 1217 ("[A]n accused

infringer must . . . join both the exclusive licensee and the patentee in a declaratory

action because the patentee is a necessary party.") (citing *Enzo APA & Son, Inc. v.*

*Geapag A.G.*, 134 F.3d 1090, 1094 (Fed. Cir. 1998)); *see also Intellectual Prop.*

*Dev., Inc. v. TCI Cablevision of Cal. Inc.*, 248 F.3d 1333, 1347 (Fed. Cir. 2001)

("[A] patent owner should be joined, either voluntarily or involuntarily, in any

patent infringement suit brought by an exclusive licensee having fewer than all

substantial patent rights.").

### 2.       *Joinder of the University Is Not Feasible*

The second step addresses whether joinder is "feasible."  Here,

because the court has already dismissed the University under Eleventh Amendment

principles, joinder of the University necessarily is not feasible.  The University has

not consented to suit in this jurisdiction, and the court cannot order its joinder

given its Eleventh Amendment immunity.  *See Peabody III*, 610 F.3d at 1078;

*A123*, 626 F.3d at 1219-20 ("Absent a waiver, [the University of Texas] cannot be

joined.").

### 3.       *Under Rule 19(b), the Action Cannot Proceed Without the University*

Because it is not feasible to join the University, the dispositive

question is whether "in equity and good conscience, that action should proceed

among the existing parties or should be dismissed."  Rule 19(b).  To make this

determination, the court balances four factors: (1) the prejudice to any party or to

the absent party; (2) whether relief can be shaped to lessen prejudice; (3) whether

an adequate remedy, even if not complete, can be awarded without the absent

21

party; and (4) whether there exists an alternative forum. *Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.*, 276 F.3d 1150, 1161-62 (9th Cir. 2002) (analyzing Rule 19(b)'s factors to determine whether a party is "indispensable"). Rule 19's indispensable-party inquiry "is a practical, fact-specific one, designed to avoid the harsh results of rigid application." *Id.* at 1154; *see also Republic of Philippines v. Pimentel*, 553 U.S. 851, 862-63 (2008) ("The design of . . . Rule [19] . . . indicates that the determination whether to proceed will turn upon factors that are case specific, which is consistent with a Rule based on equitable considerations."). Here, all four factors favor dismissal.

First, the court has already determined that the University should be joined because the patent owner's rights could be impaired without it having participated in the suit. "The prejudice to the [University] stems from the same impairment of legal interests that makes the [University] a necessary party under [former] Rule 19(a)(2)(i)." *Dawavendewa*, 276 F.3d at 1162 (citing *Clinton v. Babbitt*, 180 F.3d 1081, 1090 (9th Cir. 1999) (determining prejudice under Rule 19(b) is essentially the same as whether someone is "necessary" under Rule 19(a)). And this same factor also applies to the two state-law counts against Valensa -- adjudicating those counts necessarily raises the validity of the '533 Patent. The University could be prejudiced if the court proceeds on any of the Three Counts.

22

Second, there are no obvious alternative means to lessen the prejudice to the University.  If the court proceeds to address the validity of the '533 Patent only as to Valensa, such a determination could substantially affect the University's rights.  Because the University has not licensed all its rights in the '533 Patent, "there does not appear to be any way that this court could tailor the relief sought so as to minimize the prejudice to [the University] resulting from the invalidation of [its] patent[.]"  *KGM Indus. Co. v. Harel*, 2012 WL 5363328, at *3 (C.D. Cal. Oct. 30, 2012) (analyzing Rule 19(b)'s second prong).

Third, "a judgment rendered without [the University] would be inadequate [under] Rule 19(b)'s third factor."  *A123*, 626 F.3d at 1221.  Allowing the suit to proceed against Valensa would present a risk of multiple suits for the University -- it would "pose[] a substantial risk of multiple suits and multiple liabilities against an alleged infringer for a single act of infringement."  *Id.* at 1222 (quoting *A123 Sys., Inc. v. Hydro-Quebec*, 657 F. Supp. 2d 276, 280 (D. Mass. 2009)).

> [T]he presence of the owner of the patent as a party is indispensable, not only to give jurisdiction under the patent laws, but also in most cases to enable the alleged infringer to respond in one action to all claims of infringement for his act, and thus either to defeat all claims in the one action, or by satisfying one adverse decree to bar all subsequent actions.

23

*A10 Networks, Inc. v. Brocade Commc'ns Sys., Inc.*, 2012 WL 1932878, at *10

(N.D. Cal. May 29, 2012) (quoting *Indep. Wireless Tel. Co. v. Radio Corp. of Am.*,

269 U.S. 459, 468 (1926)).

Finally, an alternative forum is plainly available -- the parallel action

in Florida, which involves the same parties as in this action.  Cyanotech, if

necessary, can bring its claims of patent invalidity or non-infringement (and its

state-law claims against Valensa) as counterclaims in the parallel action.  *See*

*A123*, 626 F.3d at 1222 ("[B]ecause [the University of Texas] has waived

immunity to suit in Texas, A123 may assert counterclaims for a declaration of

noninfringement and invalidity in that action.") (analyzing Rule 19(b)'s fourth

factor).

In short, applying all four factors, this action cannot proceed "in

equity and good conscience" without the University.  The University is an

"indispensable" party.  Accordingly, the action is dismissed under Rule 19(b).

## V. <u>CONCLUSION</u>

Under Rules 12(b)(7) and 19, the Motion to Dismiss is GRANTED.

The University of Illinois has Eleventh Amendment immunity from suit in this

court, and is a required party without whose presence the action cannot proceed.

The action is DISMISSED without prejudice to Cyanotech bringing its claims in

the pending parallel action in the U.S. District Court for the Middle District of

Florida.  The Clerk of Court shall close the case file.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, February 7, 2013.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Cyanotech Corp. v. U.S. Nutraceuticals, LLC*, Civ. No. 12-00352 JMS-RLP, Order Granting
Defendants' Motion to Dismiss